UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENOMMA LAB INTERNACIONAL, S.A.B. DE C.V.,<br><br>Plaintiff,<br><br>v.<br><br>MPREZAS, INC., et al.,<br><br>Defendants. | Case No. 3:22-cv-01759-WHO<br><br>**ORDER ON MOTION TO DISMISS AND STRIKE THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 87 |

Plaintiff Genomma Lab Internacional, S.A.B. de C.V. ("Genomma") filed this trademark infringement suit against defendants Mprezas, Inc.; iBrand Holdings, LLC; OPMX, LLC; Martha Nancy Hernandez; and Fernando Eduardo Bedoy Garces (collectively, "the defendants"). In its third amended complaint, Genomma newly asserts that the defendants fraudulently procured registration of their TWKOF and TUTOX trademarks. The defendants move to dismiss those new claims, move to dismiss all claims against Bedoy Garces, and move to strike several allegations in the operative complaint. For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

The factual background of this case is laid out in my Prior Order, [Dkt. No. 83], and this Order assumes familiarity with those facts, which are repleaded in the Third Amended Complaint ("TAC"), [Dkt. No. 86]. In a nutshell, Genomma asserts that the defendants' TWKOF and TUTOX marks, labels, and products infringe on Genomma's trademark and copyright for its TUKOL cough medicine products. *See* Prior Order Background. Additional relevant facts from the TAC are as follows.

Genomma asserts that Hernandez fraudulently manipulated the TWKOF mark when she

applied to the United States Patent and Trademark Office ("USPTO") for a trademark because she used a W and an F in the registration but the label itself appears to use a U and an L. TAC ¶¶ 89, 91. Genomma also says that Hernandez falsely told the USPTO that she did not know of other confusingly similar marks used in commerce. *Id.* ¶¶ 90-92. According to Genomma, this was all because Hernandez intended to deceive the USPTO. *Id.* ¶ 30. Genomma alleges that the USPTO "accepts" but "does not verify" information in the registrations provided by the applications. *Id.* ¶¶ 90-91, 93.

Genomma also appears to assert that before selling the TWKOF or TUTOX products, the defendants were required to register with the Food and Drug Administration ("FDA") and receive a "National Drug Code." *Id.* ¶¶ 47-48, 52-55. It states that the defendants did not do so for TUTOX at least as of February 27, 2023, yet Hernandez submitted a sworn declaration to the USPTO that the mark was used in commerce at least by that date. *See id.* ¶ 107-10. Genomma further alleges that the TUTOX packaging label provided to the USPTO in the application was not the real TUTOX label but rather an edited version of the TWKOF label designed to help the defendants register the mark. *Id.*

Additionally, Genomma alleges that individual defendant Fernando Eduardo Bedoy Garces[1] is the sole manager and employee of iBrand, a Wyoming LLC, and the sole owner and manager of OPMX, a Delaware LLC. *Id.* ¶¶ 10, 12, 15-16. It asserts that Bedoy Garces did not provide his location of residence during his deposition, but it believes he lives in Southern California due to conditions of his current probation. *Id.* ¶ 14.

According to Genomma, Mprezas assigned its TWKOF trademark to iBrand in April 2022. *Id.* ¶ 39. Bedoy Garces signed the agreement and filed the assignment with the USPTO. *Id.* Genomma alleges that at that time, Bedoy Garces knew that the TWKOF mark was being misused to confuse and deceive customers. *Id.* ¶ 40. It asserts that OPMX, and therefore Bedoy Garces, are responsible for the TWKOF design. *Id.* ¶¶ 61-63.

---

[1] It is not clear from the parties' papers which name this defendant uses. This Order refers to his apparent surnames, "Bedoy Garces."

2

The TAC asserts six causes of action: (1) trademark infringement under 15 U.S.C. § 1114,[2] *id.* ¶¶ 64-72; (2) unfair competition under 15 U.S.C. § 1125(a)(1)(A), *id.* ¶¶ 73-78; (3) trade dress infringement, *id.* ¶¶ 79-86; (4) fraudulent procurement of the TWKOF mark under 15 U.S.C. § 1064, *id.* ¶¶ 87-96; (5) copyright infringement under 17 U.S.C. §§ 101 et seq., *id.* ¶¶ 97-103; and (6) fraudulent procurement of the TUTOX mark under 15 U.S.C. § 1064, *id.* ¶¶ 105-13.

The defendants filed a motion to dismiss the two fraudulent procurement claims and all claims against Bedoy Garces, as well as a motion to strike certain allegations in the TAC and two requests for judicial notice. ("Mot.") [Dkt. No. 87]. Genomma opposed. ("Oppo.") [Dkt. No. 89]. The defendants replied. ("Repl.") [Dkt. No. 90]. I held a hearing at which counsel for both parties appeared.

**LEGAL STANDARD**

**I.     RULE 12(B)(6)**

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court

---

[2] As noted in my Prior Order, Genomma cites 15 U.S.C. § 1114(a), though it seems that it intended to bring the claim under 15 U.S.C. § 1114(1)(a). If it files an amended complaint, it should update this citation accordingly.

1   is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of
2   fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
3   2008).
4         If the court dismisses the complaint, it "should grant leave to amend even if no request to
5   amend the pleading was made, unless it determines that the pleading could not possibly be cured
6   by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making
7   this determination, the court should consider factors such as "the presence or absence of undue
8   delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,
9   undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport*
10  *Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## II.     RULE 9(B)

      FRCP 9(b) imposes a heightened pleading standard where a complaint alleges fraud or mistake. Under FRCP 9(b), to state a claim for fraud, "a party must state with particularity the circumstances constituting fraud," and the allegations must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124, 1126 (9th Cir. 2009) (citations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be plead[ed] generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011) (emphasis omitted).

## III.    RULE 12(F)

      FRCP 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). The function of a motion to strike under Rule 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing of those issues before trial. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)

(citation omitted).  Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).  In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc*., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

## DISCUSSION[3]

### I. FRAUDULENT PROCUREMENT OF TRADEMARK CLAIMS

My Prior Order dismissed Genomma's claim for trademark cancellation, reasoning that the Ninth Circuit endorsed case law affirming that trademark cancellation is a remedy, not an independent cause of action.  Prior Order 15:6-16:15 (citing *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 598 (9th Cir. 2014)).  I directed Genomma to clarify the statutory basis for its request for trademark cancellation, to explain whether I (as opposed to the USPTO) have authority to review a petition for cancellation, and whether it is required to or does meet the heightened pleading standards of Rule 9(b).[4]  *Id.* 16:8-15.

In the TAC, Genomma clarifies that it seeks cancellation by bringing its claims under 15 U.S.C. § 1064 for fraudulent procurement of the TWKOF and TUTOX trademarks.  TAC ¶¶ 87-96, 105-113.  In their motion, the defendants appear to argue that Genomma fails to state a claim for fraudulent procurement of the TWKOF and TUTOX marks.  Mot. 4:15-6:21.  In opposition, Genomma asserts that it has plausibly alleged each element of the claims with particularity, as required by Rule 9(b).  Oppo. 10:10-14:17.

---

[3] The defendants' request for judicial notice of the TWKOF registration, [Dkt. No. 87-3] is DENIED again as moot, as it was in the Prior Order, because again the document was attached to the TAC.  The request for judicial notice of the TUTOX registration, [Dkt. No. 87-4], is GRANTED because it was referenced in and incorporated into the TAC but was not attached.  *See Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 912 (N.D. Cal. 2015) (citations omitted).

[4] I also instructed Genomma to clarify whether cancellation can be a remedy for a mark that is not yet registered.  Prior Order 16:12-13.  At the time of the Prior Order, TUTOX had not yet been registered.  Genomma now asserts that the defendants registered TUTOX with the USPTO, *see* Oppo. 11 n.2; TAC ¶ 57,

1  Courts in this district have applied the heightened pleading requirements of FRCP 9(b) to
2  claims of fraud under the Lanham Act and in trademark cancellation proceedings. *See Clorox Co.*
3  *v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 634 (N.D. Cal. 2019) (applying Rule 9(b)
4  requirements to a Lanham Act claim and noting "the Ninth Circuit has not definitively spoken as
5  to whether Rule 9(b) applies to Lanham Act claims"); *23andMe, Inc. v. Ancestry.com DNA, LLC*,
6  356 F. Supp. 3d 889, 908 (N.D. Cal. 2018), *aff'd*, 778 F. App'x 966 (Fed. Cir. 2019) (evaluating
7  Lanham Act claim under Rule 9(b) and collecting cases in this district); *see also Aureflam Corp. v.*
8  *Pho Hoa Phat I, Inc.*, 375 F. Supp. 2d 950, 953 (N.D. Cal. 2005). I will as well.

Under 15 U.S.C. § 1064, "[a] petition to cancel a registration of a mark" may be filed by "any person who believes" that they are or will be damaged by the registration. Such a petition may be filed "[a]t any time if . . . its registration was obtained fraudulently or contrary to the provisions of" certain statutes.[5] 15 U.S.C. § 1064(3); *see also Great Concepts, LLC v. Chutter, Inc.*, 84 F.4th 1014, 1020 (Fed. Cir. 2023) (noting this statute "permits a third party to file '[a] petition to cancel a registration of a mark' '[a]t any time if' the registered mark's 'registration was *obtained fraudulently*'" (quoting 15 U.S.C. § 1064) (emphasis in *Great Concepts*)); *eCash Techs., Inc. v. Guagliardo*, 210 F. Supp. 2d 1138, 1148 (C.D. Cal. 2001) ("Fraud in the procurement of a trademark registration may be raised as a ground for cancellation in civil litigation."). "If a petition is filed '[w]ithin five years from the date of the registration,' then 'any ground that would have prevented registration in the first place qualifies as a valid ground for cancellation.'" *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 822 (9th Cir. 2021) (first quoting 15 U.S.C. § 1064(1); and then quoting *Pinkette Clothing, Inc., v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1021 (9th Cir. 2018)); *see also Ghomeshi v. StrongVolt, Inc.*, 851 F. App'x 193, 196 n.4 (Fed. Cir. 2021) (unpublished) (same) (citing *Int'l Mobile Machines Corp. v. Int'l Tel. & Tel. Corp.*, 800 F.2d 1118, 1119-20 (Fed. Cir. 1986)).

To state a claim for cancellation of a trademark based on fraud in the procurement, the

---

[5] The defendants repeatedly argue that Genomma did not contest the registration of the mark during the registration process, but the statute clearly provides that the petition for cancellation can be brought "[a]t any time" and does not appear to require the petitioner to have previously presented a challenge during the registration process.

aggrieved party must plead: "(1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance." *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 952 (N.D. Cal. 2015) (quoting *Hokto Kinoko Co. v. Concord Farms, Inc.,* 738 F.3d 1085, 1097 (9th Cir. 2013)); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) (same); *eCash Techs.*, 210 F. Supp. 2d at 1149 (same) (citing J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:61 at 31-112 (2000)).

"While knowledge may be pleaded generally under Rule 9(b), Defendants must still give enough factual context to render knowledge of the falsity . . . plausible under Rule 8(a)." *Spirit Clothing Co. v. Jerry Leigh of Cal., Inc.*, No. 2:16-CV-08637-RGK-JPR, 2017 WL 5891056, at *4 (C.D. Cal. June 30, 2017) (citing *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8 (9th Cir. 2014)). Applicants for trademark registrations are obligated to disclose "conflicting rights" of other trademark users where those rights are "clearly established," including by registration of the mark. *AirWair, Int'l Ltd.*, 84 F. Supp. 3d at 952 (citations omitted). But statements in applications to the PTO that are based on "honest, but perhaps incorrect belief[s]" or that are "innocently made" do not constitute fraud. *eCash Techs.*, 210 F. Supp. 2d at 1149 (citing *McCarthy*, § 31:66 at 31-117-18); *L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1351 (Fed. Cir. 1999). "[M]aterial" means that the "registration would not have issued" without the misrepresentation. *eCash Techs.*, 210 F. Supp. 2d at 1149 (citing *McCarthy* § 31:67 at 31-118).

### A.   TWKOF

The defendants focus their challenge on the second element of a cancellation claim, whether the registrant knew or believed that a representation was false. Mot. 5:28-6:2; *see also* Repl. 4:4-10, 4:20-27. They also challenge the falsity of the representation, Repl. 3:23-4:3, 4:11-19, and reasonable reliance, *id.* 4:28-5:7.

Genomma sufficiently alleges falsity. *See AirWair Int'l Ltd.*, 84 F. Supp. 3d at 952. It asserts that Hernandez's representations in the TWKOF registration application were false because

1    they showed that a W would be used for the second letter and an F for the final letter, when the

2    product label actually used a U for the second letter and an L for the final letter.  *See* TAC ¶¶ 30,

3    89, 91.  Genomma also asserts that in the registration, Hernandez falsely declared that she did not

4    know of other confusingly similar marks being used in commerce.  *Id.* ¶¶ 90-92.  Together with

5    the other allegations in the complaint showing how the TWKOF mark was used—including the

6    use of a cursive W and F that look very similar to a U and L, *see id.* ¶¶ 21-22; Prior Order

7    Background—these allegations are sufficiently particular, specific, and plausible to meet the Rule

8    9(b) requirements, as well as to allege falsity under 15 U.S.C. § 1064.  And these alleged

9    misrepresentations were material because the mark plausibly would not have been registered if the

10   USPTO had been informed that the defendants intended to present their mark as "TUKOL" or that

11   the defendants knew the TUKOL mark existed and was confusingly similar.  *See eCash Techs.*,

12   210 F. Supp. 2d at 1149.

13         Genomma also sufficiently pleads that the USPTO reasonably relied on the

14   misrepresentation when it issued the registration.  *See AirWair Int'l Ltd.*, 84 F. Supp. 3d at 952.  It

15   asserts that Hernandez provided a signed declaration under oath with the misrepresentations and

16   that the USPTO "accepts" but "does not verify" information in the registrations provided by the

17   applications.  TAC ¶¶ 90-91, 93.  Because the declaration was allegedly signed and sworn, it was

18   reasonable (as pleaded) for the USPTO to accept the information as true.  This element is alleged

19   with sufficient particularity.

20         But Genomma does not provide sufficient factual context to plausibly allege knowledge or

21   belief of falsity.  *See Spirit Clothing Co.*, 2017 WL 5891056, at *4.  It asserts that Hernandez

22   knew the TWKOF mark was confusingly similar to the TUKOL mark because TWKOF "has the

23   same overall appearance, it is used on the same goods, it is located right next to Plaintiff's

24   TUKOL product on store shelves, and [it] has the same trade channels."  TAC ¶ 92.  But even if

25   the marks are confusingly similar for these reasons, that does not mean that Hernandez knew of

26   the similarities.  Nor does it mean that Hernandez knew that any of her statements to the USPTO

27   were false.  Genomma must assert *some* factual context concerning Hernandez's knowledge to

28   render her knowledge of falsity plausible.  *See Spirit Clothing Co.*, 2017 WL 5891056, at *4.  As

1  currently pleaded, it fails to do so. The claim is DISMISSED for that reason. Because this is the
2  first time Genomma asserted this claim, it has leave to amend to add factual allegations, if
3  possible.

4      Finally, though the claim is dismissed for the above reasons, I address the defendants'
5  remaining two arguments because they are unpersuasive and should not be raised in a subsequent
6  motion to dismiss. First, they assert that the USPTO did not find conflicting marks and Genomma
7  did not oppose registration, Mot. 5:26-27, but these are not required for Genomma to state a claim.
8  *See AirWair Int'l Ltd.*, 84 F. Supp. 3d at 952. Second, in reply they argue that "it is an objectively
9  true statement (or opinion) that TWKOF is not confusingly similar to plaintiff's TUKOL mark."
10 Repl. 3:20-21; *see also id.* 5:9-10 (making same statement about TUTOX). Whether this is
11 correct is a merits question that cannot be decided on a motion to dismiss. At any rate, my Prior
12 Order already found that Genomma plausibly alleged that the marks are confusingly similar.
13     Accordingly, the motion is GRANTED for failure to plausibly allege knowledge of falsity
14 with particularity, with leave to amend.

15     **B.    TUTOX**

16     With respect to the claim for fraudulent procurement of the TUTOX mark, the defendants'
17 motion argues only that Genomma fails to "prov[e] fraud 'to the hilt' with clear and convincing
18 evidence" in its complaint. Mot. 6:10-21; Repl. 5:27-6:9. Of course, Genomma does not need to
19 prove anything at this stage, nor does it need (nor can it present) any evidence in its complaint.
20 This argument is unavailing.

21     In reply, the defendants also appear to argue that Genomma fails to allege falsity, Repl.
22 5:13-22, and fails to allege knowledge, *id.* 5:23-26. Because Genomma discussed these elements
23 in opposition, I will address the arguments here.

24     Genomma sufficiently alleges falsity and materiality for fraudulent procurement of the
25 TUTOX mark. *See AirWair Int'l Ltd.*, 84 F. Supp. 3d at 952. The complaint appears to assert that
26 registration with the FDA and receipt of a National Drug Code are necessary prerequisites to
27 selling the defendants' products, but the defendants had not received a National Drug Code for
28 TUTOX as of February 27, 2023. *See* TAC ¶¶ 47-48, 52-55. Because of this, Genomma alleges,

United States District Court
Northern District of California

1    the defendants could not have been selling TUTOX as of February 27, 2023, yet Hernandez
2    submitted a sworn declaration to the USPTO that the mark was used in commerce as least by that
3    date. *See id.* ¶¶ 107-10.  That declaration was therefore false. *See id.* Genomma further alleges
4    that the TUTOX packaging label provided to the USPTO in the application was not the real
5    TUTOX label but rather an edited version of the TWKOF mark designed to help them receive
6    registration. *Id.* The statements in the application were therefore also false. *See id.* These
7    allegations are specific and plausible, and they provide the defendants sufficient context under the
8    requirements of Rule 9(b). The alleged misrepresentations were material because the defendants
9    apparently applied for trademark registration under 15 U.S.C. § 1051(a), which requires applicants
10   to affirm that the mark was "in use in commerce" before filing the application.[6] If Genomma's
11   allegations are true, then the mark plausibly would not have registered because it had not
12   previously been used in commerce. The motion is denied on this basis.
13       But as for TWKOF, Genomma again fails to provide sufficient factual context to plausibly
14   allege knowledge or belief of falsity. *See Spirit Clothing Co.*, 2017 WL 5891056, at *4.
15   Genomma asserts that the product was not used in commerce prior to registration but it does not
16   say that Hernandez knew this. *See* TAC ¶ 109. It seems plausible that Hernandez, as the sole
17   officer and manager of Mprezas, *id.* ¶ 13, would have known whether the product had been sold,
18   or that the other defendants may have known, but Genomma does not allege this or other
19   supporting facts in the complaint. Accordingly, the claim is DISMISSED, though Genomma has
20   leave to amend and assert additional plausible facts.

21   **II.    CLAIMS AGAINST BEDOY GARCES**
22       Though it is not clear from the TAC, Genomma appears to assert four causes of action
23   against Bedoy Garces and OPMX: for direct and contributory infringement of the TUKOL mark,
24   TAC ¶ 69; for direct and contributory unfair competition, *id.* ¶ 76; for direct and contributory
25   infringement of the TUKOL trade dress, *id.* ¶ 85; and for direct and contributory copyright

---

[6] The defendants do not assert that they applied for registration under 15 U.S.C. § 1051(b), which would not require them to show the mark was in use in commerce but would instead require the filing of a verified statement affirming "the applicant's bona fide intention to use the mark in commerce."

10

infringement of the TUKOL copyrights, *id.* ¶ 103. Genomma also alleges that Bedoy Garces, as the sole manager and employee of iBrand, signed the agreement that reassigned the TWKOF mark from Mprezas to iBrand and filed the assignment with the USPTO, *id.* ¶ 39, knowing at the time that TWKOF was being misused, *id.* ¶ 40, and that he was "responsible" for the infringing design of OPMX's TWKOF labels, *id.* ¶¶ 62-63. Genomma alleges that Bedoy Garces is liable for the actions of iBrand and OPMX due to his status as the sole manager and employee of iBrand and as the sole owner and manager of OPMX. *Id.* ¶¶ 15-16.

The defendants seek dismissal of all claims against Bedoy Garces because, they say, he is not liable for the alleged actions of iBrand under Wyoming law or for those of OPMX under Delaware law. *See* Mot. 6:22-8:4. They made similar arguments at the first motion to dismiss, at which point I told the parties that I was not convinced state law applied and that even if it did, Wyoming law did not blanketly preclude liability. Prior Order 20:5-8 (citing Wyo. Stat. Ann. § 17-29-304(c)). The defendants do not address my stated concerns in their papers and instead again assume without explaining that state law applies.

Many cases, including those cited by Genomma, provide that individuals may be held liable for trademark infringement of corporations and companies where the individuals personally took or directed infringing actions. *See Committee for Idaho's High Desert v. Yost*, 92 F.3d 814, 823-24 (9th Cir. 1996) (hereinafter "*Committee*") (holding corporate officers and directors may be personally liable for trademark infringement of corporations that they authorize, direct, or carry out, and that individuals may be liable for under 15 U.S.C. § 1125(a) for individual actions); *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-CV-00079-EMC, 2017 WL 8294274, at *2 (N.D. Cal. Apr. 26, 2017) (confirming that the theory of liability was "predicated" on the individual defendant's "direction of and participation in the alleged trademark infringement and unfair competition," not solely based on his status as the CEO of a company with allegedly infringing marks (citations omitted)); *Partners for Health & Home, L.P. v. Seung Wee Yang*, No. CV 09-07849 RZ, 2011 WL 5387075, at *4 (C.D. Cal. Oct. 28, 2011) (concluding that an individual may be personally liable for trademark infringement under 15 U.S.C. § 1114 where he "personally directs a corporation" to commit the infringement, "particularly" where he is the sole shareholder, officer, and manager and

"performs the infringing acts himself" (citations omitted)); *Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg.*, No. C-92-3330 DLJ, 1995 WL 552168, at *6 (N.D. Cal. Aug. 30, 1995) ("If an individual actively and knowingly caused the trademark infringement, he is personally responsible.  Specifically, a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." (quoting *Babbit Elecs., Inc. v. Dunascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994)); *see also Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) (affirming district court and holding individual personally liable for infringement under 15 U.S.C. § 1125 where he played an "instrumental role" in his company's success at copying the plaintiff's product); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148-49 (4th Cir. 1987) (reversing the district court's dismissal of individual defendants in a § 1114(1) trademark infringement suit and holding that "[a] corporate official may be held personally liable for tortious conduct committed by him, though committed primarily for the benefit of the corporation" in trademark infringement actions).

        The defendants do not address any of this law and instead assert, in a single sentence, that *Committee* is not applicable because it did not address conflicting state laws for corporations and individual liability.  Mot. 8:2-5; Repl. 6:25-28.  It is true that *Committee* and the other cases in the prior paragraph explain only *how* federal applies as opposed to *why*.  But the defendants' argument is so lacking and sparse that I cannot determine why they think this distinction matters.

        Genomma, in its effort to address my concerns in the Prior Order, also misses the mark.  It assumes that federal law applies and does not explain why, citing cases that do not address the why question.[7]  It then asserts that even if federal law does not apply, choice of law principles provide that I should look to California law not Wyoming or Delaware law.  *See* Oppo. 16:14-26.  I am not convinced its choice of law analysis is correct, but more fundamentally, I do not follow Genomma's reasoning as to why choice of law principles would even come into play.

---

[7] It is possible that Genomma's citation to *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006), was intended to explain why federal law applies.  But Genomma does not explain the citation at all, *see* Oppo. 14:19-22, 16:10, nor does the case—concerning foreign banking transactions—clearly apply here.

At this juncture, it seems that federal law applies. Under federal law, as declared by the Ninth Circuit in *Committee* and as followed by some courts in this circuit, an individual can be held liable for the trademark infringement of corporations that the individual was responsible for, participated in, directed, controlled, or ratified. Genomma's allegations that Bedoy Garces was "responsible" for the TWKOF mark and knew it was being misused, yet he carried out the reassignment and USPTO filing, are probably sufficient to state a claim that Bedoy Garces participated in, directed, or controlled the infringement and there is individually liable for as to TWKOF. *See* TAC ¶¶ 39-40, 61-63. But the TAC is not clear as to whether Genomma is also suing Bedoy Garces for claims related to TUTOX, and I am not clear whether Genomma stated any facts to that effect. For those reasons, and because I am unclear about the parties' legal arguments in this section, I decline to rule on the defendants' motion as to these arguments. Instead, the defendants may re-raise these arguments—with better briefing that addresses the questions I raised—on the next round of motions to dismiss or at summary judgment. Genomma may respond to these arguments at that time.

### III. MOTION TO STRIKE

#### A. Allegations Regarding Bedoy Garces' Residence

The defendants move to strike the allegations in the pleadings that Bedoy Garces served a two-year prison sentence in California ending in 2021 and as part of his probation is required to live in Southern California until 2025. *See* TAC ¶ 14. Genomma alleges that Bedoy Garces otherwise refused to provide his place of residence during his deposition, and so it provided this contested allegation as an alternative method to demonstrate that this court has personal jurisdiction over Bedoy Garces. *See id.*; Oppo. 18:12-23. Genomma provides only the information necessary to assert personal jurisdiction and does not provide the underlying conviction or other unnecessary details. Bedoy Garces does not contest that he refused to provide his residence or that there was no other way for Genomma to assert personal jurisdiction. The information is relevant and material, and not redundant, impertinent, or scandalous. *See* Fed. R. Civ. Proc. 12(f). And it does not matter that the defendants are not currently challenging personal jurisdiction. The motion is DENIED.

**B.     National Drug Codes**

Finally, the defendants move to strike the allegations that they failed to comply with the National Drug Codes, arguing that Genomma is essentially trying to bring suit to enforce the federal Food, Drug, and Cosmetic Act, which it cannot do.  Mot. 9:1-10:6.  But as discussed briefly above, Genomma's allegations about the National Drug Codes are relevant to understand its assertions that the defendants lied to the USPTO when applying for the TWKOF and TUTOX trademarks.  *Supra* Part I.  Genomma asserts that the National Drug Codes were required to sell the product but that the defendants did not have the codes when they applied for marks for their products, so they could not have been using them in commerce at that time.  Though the defendants may challenge the substance of these allegations at a later stage in litigation, they are relevant to Genomma's allegations and causes of action and do not meet the Rule 12(f) standard.  The motion is DENIED.

## CONCLUSION

For those reasons, the motion is GRANTED in part and DENIED in part.  Genomma may file an amended complaint by January 17, 2024.

**IT IS SO ORDERED.**

Dated: December 20, 2023



William H. Orrick
United States District Judge

14